# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

X

IN RE: VONAGE MARKETING AND
SALES PRACTICE LITIGATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
BUDD NAHAY, ROBERT STARRETT,
ALEX NEVELSON, ERIC TERRELL,
DARLENE PENNOCK, FRANCESCO
TRAMA and JOHN STEWART, on
behalf of themselves and all others
similarly situated,

       **Plaintiffs,**

  -against-

VONAGE AMERICA, INC.,
VONAGE HOLDINGS CORP., and
VONAGE MARKETING INC.

       **Defendants.**

Civ. Action No. 3:07-cv-03906-
FLW-DEA

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market Street
Suite 1380
Philadelphia, PA  19102
(215) 564-2300

Scott Alan George
**SEEGER WEISS LLP**
550 Broad Street, Suite 920
Newark, NJ  07210
(973) 639-9100

Andrew N. Friedman
 Victoria S. Nugent
 Whitney R. Case
**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

*CO-LEAD COUNSEL FOR
 THE CLASS*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

PROCEDURAL BACKGROUND...............................................................1

    A.    The Litigation Leading to the Settlement.................................1

    B.    The Terms of the Settlement ..................................................5

    C.    Procedural Landscape ............................................................8

LEGAL ARGUMENT................................................................................9

POINT ONE...............................................................................................9

THE SETTLEMENT CLASS SHOULD BE CERTIFIED .......................9

    A.    The Requirements of Fed. R. Civ. P. 23 (a) Are Satisfied....9

        1)    Numerosity...................................................................10

        2)    Commonality................................................................11

        3)    Typicality ....................................................................12

                As former subscribers, the named Plaintiffs are typical of members of the Class: like the Class the Plaintiffs were subject to the same challenged policies and practices. ....................................................................12

        4)    Adequacy of Representation .......................................13

    B.    The Settlement Meets the Requirements of Fed. R. Civ. P. 23(b)(3)................................................................................14

        1)    Common Questions of Law and Fact Predominate .................14

        2)    A Class Action is Superior to Numerous Individual Actions ........................................................................15

POINT TWO............................................................................................17

THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ..................17

    A.    Standards For Approval Of Class Action Settlement .........................18

B.    The Settlement Is Fair, Reasonable And Adequate ...........................21

    1)    Continued Litigation Would Be Long, Complex And Expensive ...................................................................................21

    2)    The Reaction Of The Class Is Virtually Unanimous In Favor Of The Proposed Settlement.............................................23

    3)    The Parties Have Completed Sufficient Investigation And Discovery ...........................................................................24

    4)    Plaintiffs Face Considerable Risk In Proceeding to Trial ........26

    5)    The Risks Of Maintaining The Class Action Through Trial........................................................................................28

    6)    Defendant's Ability To Withstand Greater Judgment, And Reasonableness Of The Settlement In Light Of The Best Possible Recovery And All Attendant Risks Of Litigation .................................................................................29

CONCLUSION .........................................................................................32

# TABLE OF AUTHORITIES

## CASES

*Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30 (3d Cir. 1971)...............18

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)............................... 13, 15

*Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994)...............................11

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)........................................27

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993). .................................... 19, 23

*Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*

    *without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) ...27

*Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004)..............17

*Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641 (N.D. Tex. 1978),

    *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980). ...............................28

*Danvers Motor Co. Inc. v. Ford Motor Co.*, 543 F.3d 141 (3d Cir. 2008). ...........12

*Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.*,

    657 F.2d 890 (7th Cir. 1981) .......................................................................29

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985.................................................10

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); ................................................ passim

*Handschu v. Special Services Div.*, 605 F.Supp. 1384 (S.D.N.Y. 1985); ..............26

*Hassine v. Jeffes,* 846 F.2d 169 (3d Cir. 1988)................................................. 11, 13

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228  (5th Cir. 1982). ...........26

*In re Corrugated Container Anti-Trust Litigation*, 643 F.2d 195

    (5th Cir. 1981); ...........................................................................................26

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) .......29

*In re GMC Pick-Up Truck Fuel Tank Product Liability Litigation,*

    55 F.3d 768 (3rd Cir.), cert. denied, 516 U.S. 824 (1995) ................... passim

*In re Mercedes-Benz Antitrust Litig*., 213 F.R.D 180 (D.N.J. 2003)......................15

*In re Prudential Ins Co. of Am. Sales Practices Litig.*, 148 F.3d 283

    (3d Cir. 1998)....................................................................... 11, 17

*In re Prudential Ins. Co. of America Sales Practice Litig.*, 962 F.Supp.

    450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ............... 9, 14, 20, 23

*In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004) ............. 10, 29

*Lake v. First Nationwide Bank*, 900 F.Supp. 726 (E.D. Pa. 1995)................... 20, 21

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999)............................... 18, 24

*Levinson v. Prentice-Hall, Inc.,* 868 F.2d 558 (3d Cir. 1989)................................27

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982). ............20

*Phillips Petroleum Co. v. Schutts*, 472 U.S. 797 (1985) ........................................16

*Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309 (S.D.N.Y. 1978).....................21

*Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115 (3rd Cir. 1990) ................................23

*Varcallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005)....15

*Vargas v. Calabrese,* 634 F. Supp. 910 (D.N.J. 1986). ...........................................10

*Walsh v. Great Atlantic & Pacific Tea Co.,*726 F.2d 956 (3d Cir. 1983); .............18

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982). .............................................27

*Weiss v. Mercedes-Benz of North America,* 899 F. Supp. 1297

    (D.N.J. 1995). ....................................................................... passim

*Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1983); .................................................10

*Welch v. Bd. of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131 (W.D. Pa. 1993) ...10

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975). ................................10

*Zinberg v. Wash. Bancorp, Inc.,* 138 F.R.D. 397 (D.N.J. 1990) ..................... 10, 12

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION, THIRD § 30.43 (1995) ...................................19

**RULES**

Fed. R. Civ. P. 23 ............................................................................................ passim

## PRELIMINARY STATEMENT

Pursuant to Rule 23 (e) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this memorandum in support of their motion for final approval of the proposed $4.75 million dollar settlement (the "Settlement") pursuant to the terms and conditions of the Stipulation and Settlement Agreement dated December 23, 2010 between Plaintiffs and Vonage America, Inc., Vonage Holdings Corp., and Vonage Marketing, Inc. (now Vonage Marketing, LLC) (collectively "Vonage" or "Defendant").  The Settlement provides reasonable, comprehensive and robust relief to the Class and far surpasses the approval requirements of Rule 23.

The Settlement is the product of hard fought, arms-length mediation and negotiation over months.  The Settlement represents a manifestly successful outcome for the Class, and provides significant relief to Vonage customers.  The Settlement also provides global peace to Vonage over several of its marketing practices that were the focus of a settlement with the attorneys general of several states in 2009.  It should, respectfully, be finally approved.

## PROCEDURAL BACKGROUND

### A. The Litigation Leading to the Settlement

Plaintiffs Nahay and Starrett commenced the first putative class action lawsuit (the "Action") against defendants Vonage America, Inc. and Vonage Holdings Corp. on December 4, 2006 (Docket No. 1; Civ. A. No. 3:06-cv-05801-

FLW-TJB), alleging on behalf of a national class that Vonage misrepresented several features of its service, including the scope of its promotional one month free and money back guarantee offers, and the charges associated with account cancellation, and failed to timely honor requests for cancellation.  Joint Declaration of Andrew N. Friedman and Jonathan Shub in Support of Final Approval of Settlement ("Joint Decl.") ¶ 2.  Several subsequent actions were filed based on similar allegations, including *Porter v. Vonage Holdings Corp., et al.*, Civ. A. No. 2:07-cv-1850 (U.S. District Court for the Central District of California), *Nevelson v. Vonage Holding Corp. et al.*, Civ. A. No. 3:07-cv-0732 (U.S. District Court for the Southern District of California), *Pennock v. Vonage America, Inc. et al.*, Civ. A. No. 2:07-cv-0320 (U.S. District Court for the Western District of Washington), *Terrell v. Vonage Holding Corp.*, Civ. A. No. 3:07-cv-4907 (U.S. District Court for the Northern District of California), and *Trama v. Vonage Holdings Corp. et al.*, Civ. A. No. 3:07-cv-04170 (U.S. District Court for the District of New Jersey).[1]  Joint Decl. ¶ 3.  On August 16, 2007, the Judicial Panel on Multi-District litigation transferred all actions related to the challenged marketing and sales claims against Vonage, to this Court.  Joint Decl. ¶ 4.  On October 1, 2007, Plaintiffs Starrett and Nahay petitioned this Court to consolidate the transferred

---

[1]     The claims of plaintiff Porter were ultimately not included in the Consolidated Complaint.

actions into the instant action (Civ. A. No. 3:07-cv-03906-FLW-DEA) and for the appointment of Cohen, Milstein, Sellers & Toll, PLLC and Seeger Weiss LLP as Co-Lead Class Counsel, which the Court approved on November 7, 2008.  (Docket Nos. 10 and 15).  Joint Decl. ¶ 5.  On December 19, 2008, Plaintiffs filed their Consolidated Class Action Complaint.  (Docket No. 19).  In the consolidated action, Plaintiffs sought relief on behalf of a nationwide class for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of New Jersey and California consumer protection laws, and for unjust enrichment. Joint Decl. ¶ 6.

Discovery relating to the claims of the individual plaintiffs was completed, including the various terms of service relating to each of their claims and accounts. Joint Decl. ¶ 7.  In response to the Consolidated Class Action Complaint, Defendants filed a Motion to Compel Arbitration and to Dismiss and/or Stay Claims ("Motion to Dismiss") based on arbitration clauses, including bans on class actions, in Vonage's various terms of service.  (Docket No. 26).  This motion was fully briefed and initially heard by the Court on September 1, 2009, after which the Court denied the Motion without prejudice to Defendant resubmitting the motion after a period of "discovery relating to the dispute resolution/arbitration provisions." (Docket No. 57).  Joint Decl. ¶ 8.

On November 16, 2009, an Assurance of Voluntary Compliance ("AG Settlement") between Vonage and the attorneys general of thirty-two states was approved by the court. Joint Decl. ¶ 9. The initial action by Plaintiffs Starrett and Nahay predated the first of the actions by an attorney general challenging the same conduct by Vonage. *Id.* Central to the eventual AG Settlement were prospective changes in the disclosures made by Vonage to customers starting (February 1, 2010), as well as changes to its cancellation procedure to better ensure that cancellations were timely made. *Id.* While compensation was made available to persons who had complained before March 16, 2010, to the attorneys general who were part of the AG Settlement, no wider notice or claims process was available to customers who had not filed such a complaint. *Id.*

Defendant filed its Renewed Motion to Dismiss on December 2, 2009 (Docket No. 59), and this motion was fully briefed, with no decision, prior to the settlement discussions. Joint Decl. ¶ 10. During the pendency of Defendants' Motion to Dismiss, the parties entered into settlement discussions, including informal discovery. Joint Decl. ¶ 11. On August 10, 2010, the parties formally met to further discuss global resolution of the claims in this case. *Id.* Settlement discussions continued thereafter and, on September 24, 2010, culminated in the terms of a settlement in principle. *Id.* On September 27, 2010, the parties submitted a Joint Stipulation Regarding Stay of Proceedings. (Docket No. 74).

Joint Decl. ¶ 12.  On September 27, 2010, the Court granted the stipulation and terminated the pending Renewed Motion to Dismiss and Compel Arbitration. (Docket No. 76).  *Id.*

On January 13, 2011, the Court granted Preliminary Approval of the Settlement, approving, *inter alia*, the notice program to the class.  Docket No. 89). Notice to the class included direct notice by electronic mail to all account holders who are or may be effected by the settlement, publication for three weekdays in USA Today, a static notice on account holder's account sites, a toll-free number and a dedicated webpage providing access to the long form notice, frequently asked questions and important litigation documents, including the settlement agreement.[2]  Joint Decl. ¶ 13.

## B. <u>The Terms of the Settlement</u>

The parties reached agreement on the terms of the proposed settlement through a vigorous debate of legal and factual theories by counsel and extensive arms-length negotiations.  If the proposed settlement is approved by the Court, Defendant has agreed to make a payment of $4.75 million in cash into a common fund for the benefit of the proposed settlement class, including the costs of settlement administration and attorneys' fees and costs associated with the

---

[2]     As described in the Affidavit of the Settlement Administrator (Joint Decl., Exhibit C), this notice program was fully completed.

prosecution of these claims and the administration of the settlement.  The proposed settlement class consists of: all Persons in the United States, its territories or possessions who are or were subscribers or customers of Vonage on or before the date of entry of the Preliminary Approval Order, who (1) signed up under a one- or two-month free service promotion, (2) cancelled service within ten days of the expiration of their money back guarantee promotion, (3) were charged a disconnection fee and/or (4) requested cancellation but were thereafter charged regular monthly service fees for service they did not use after the cancellation request.  Excluded from the Settlement Class are Defendant, any entity in which Defendant has or had a controlling interest, any officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, any Judge assigned to this action and his or her immediate family, and anyone who timely requests exclusion from the Class.

As set forth in Article II of the Settlement Agreement, cash benefits are available for four categories of damages alleged by members of the settlement class as follows:

Category 1 – **One Month Free Claims**:   Settlement Class Members who subscribed to Vonage service under a one- or two-month free promotion, whose promotional free month(s) of service began on the date their accounts were administratively opened, and not the date full service was available for use (for reasons including, but not limited to, delays associated with porting of existing telephone numbers and the shipping and receipt of equipment), shall be eligible to receive $10.00 (subject to possible *pro rata* reduction) with submission of an eligible Claim.  All Settlement Class Members may submit a Claim by providing

the required information for any Claim.  Vonage shall verify that each Claimant was a customer or provide the Settlement Administrator with access to such data. Approved One Month Free Claims will be paid from a fund equal to one-fifth (1/5) of the Common Fund after distribution of any payments authorized as part of the Fee and Cost Application.  The remaining four-fifths (4/5) of the Common Fund (after distribution of payments authorized as part of the Fee and Cost Application) will comprise the fund used to pay the Money Back Guarantee Claims, the Disconnection Fee Claims and the Post-Cancellation Service Fee Claims described below.

Category 2 – **Money Back Guarantee Claims**:  Those Settlement Class Members who subscribed to Vonage service under a money back guarantee promotion, who cancelled their subscription between thirty-one (31) and forty (40) days after signing up with Vonage (or between sixty-one (61) and seventy (70) days for Settlement Class Members who signed-up between August 15, 2007, and February 3, 2008), who were charged and paid a monthly service fee or equipment charges from Vonage, and who did not receive a refund or credit from Vonage for such fees or charges shall be eligible to receive payment for such fees and charges (refund not to exceed $25.00 for the monthly service fee and $80.00 for equipment charges, subject to possible *pro rata* reduction) with submission of an eligible Claim.  Settlement Class Members making a Claim under this benefit shall provide the date of cancellation, and the amount and type of charges paid by them that were not otherwise refunded or credited by Vonage.  Vonage shall verify such Claims, including the amount of such Claims, or provide the Settlement Administrator with access to such data.

Category 3 – **Disconnection Fee Claims**: Settlement Class Members who subscribed to Vonage service, who were charged and paid any termination, cancellation, or disconnection fee for cancelling Vonage service, and who did not previously receive a refund or credit for such fees from Vonage shall be eligible to receive payment for those fees (refund not to exceed $40.00, subject to possible *pro rata* reduction) with submission of an eligible Claim.  Settlement Class Members making such Claims shall provide the date of cancellation and the amount of termination, cancellation or disconnection charges paid by them that were not otherwise refunded or credited by Vonage.  Vonage shall verify such Claims, including the amount of such Claims, or provide the Settlement Administrator access to such data.

Category 4 – **Post-Cancellation Service Fee Claims**: Those Settlement Class Members who requested cancellation of their subscription with Vonage, but were thereafter charged and paid regular monthly service fees for service they did not use after their cancellation request, and that were not otherwise refunded or credited by Vonage, shall be eligible to receive payment for such service fees (refund not to exceed $50.00, subject to possible *pro rata* reduction) with the submission of an eligible Claim and a sworn declaration of (1) the attempted cancellation and (2) that Vonage's services were not used thereafter. The sworn declaration shall provide the details of the efforts of cancellation, including the date(s) and method(s) of cancellation.  Vonage shall review such Claims for credibility, including for evidence of continued use of Vonage service, against its records or provide the Settlement Administrator access to such data.

No cash payment will be made on any Claim for any of the above Category 1 through 4 Benefits where the total distribution amount (prior to any *pro rata* reduction) is less than $10.  Class Members may be eligible for up to $195.00 in cash benefits, subject to *pro rata* reduction.   Any funds left in the Common Fund at the close of the claim period will be converted into a *cy pres* award to a as selected by Plaintiffs' and Vonage's counsel and approved by the Court.

## C. <u>Procedural Landscape</u>

In order to effectuate the settlement, the parties have agreed to seek certification of a settlement class (the "Class") under Fed.R.Civ.P. 23. The Class is defined in the Settlement Agreement and the parties have reserved all of their rights in the event the Settlement is rejected.

## LEGAL ARGUMENT

## POINT ONE

## THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Class actions certified for the purposes of settlement are well-recognized under Fed.R.Civ.P. 23.  *See, e.g., In re Prudential Ins. Co. of America Sales Practice Litig.*, 962 F.Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Class Counsel submits that the Court was correct in preliminarily certifying the Class for settlement purposes pursuant to Rules 23(a) and (b)(3), and that the following Class should now be finally certified:

> All Persons in the United States, its territories or possessions who are or were subscribers or customers of Vonage on or before the date of entry of the Preliminary Approval Order, who (1) signed up under a one- or two-month free service promotion, (2) cancelled service within ten days of the expiration of their money back guarantee promotion, (3) were charged a disconnection fee and/or (4) requested cancellation but were thereafter charged regular monthly service fees for service they did not use after the cancellation request.

Excluded from the Settlement Class are Defendant, any entity in which Defendant has or had a controlling interest, any officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, any Judge assigned to this action and his or her immediate family, and anyone who timely requests exclusion from the Class.

### A. **The Requirements of Fed. R. Civ. P. 23 (a) Are Satisfied**

The four prerequisites of Rule 23 (a) are that:

1.      the class be so numerous that joinder of all members is impracticable;

2.      there be questions of law or fact common to the class;

3.      the claims or defenses of the representative parties be typical of the claims or defenses of the class; and

4.      the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1983); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 246 n.7 (3d Cir. 1975).   As discussed below, in light of the proposed Settlement, Plaintiffs and the Class meet the requirements of Rule 23(a), which are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.   *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527 (3d Cir. 2004).

**1) <u>Numerosity</u>**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.   Impracticability, however, does not mean impossibility. *See, e.g.*, *Zinberg v. Wash. Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990); *Vargas v. Calabrese,* 634 F. Supp. 910, 918 (D.N.J. 1986).   In *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985), the Third Circuit found the numerosity requirement satisfied where the proposed class consisted of "more than 90 geographically dispersed plaintiffs."   *See also Welch v. Bd. of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131, 135 (W.D. Pa. 1993) (Third Circuit has

generally held that the numerosity requirement is met if proposed class exceeds 100 members).

Here, joinder of all Class Members is impracticable because there are millions of Class Members, dispersed throughout the United States.  No one has claimed that this requirement is not satisfied.  Accordingly, the numerosity requirement is met.

### 2) <u>Commonality</u>

Rule 23(a)(2) provides that a suit may be maintained as a class action if "there are questions of law *or* fact common to the class." (emphasis added).  Rule 23 does not require that all members of the class be identically situated, as long as there are substantial common questions of either law or fact.  *In re Prudential Ins Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 310 (3d Cir. 1998); *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1988).  Indeed, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Because this requirement may be satisfied by the presence of a single common issue, it is "easily satisfied." *In re Prudential,* 148 F.3d at 310.

In this case, the commonality requirement is easily satisfied because common questions of law and fact exist as to all members of the Class.  By way of

example, whether Vonage illegally misrepresented the scope of its promotional one month free and money back guarantee, improperly collected disconnection, cancellation and/or termination fees, and continued to charge subscription fees despite requests for cancellation are all common to the class.  Being either current or former customers of Vonage, each Class Member was subject to these representations and practices.  Thus, since the claims of all Class Members arise from the same nucleus of operative facts and pursuant to the same legal theories, commonality is satisfied.

### 3) Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."  The typicality requirement is satisfied as long as the named Plaintiffs and the Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief."  *Zinberg,* 138 F.R.D. at 401.  Factual differences between class representatives and other members of the class do not preclude a finding of typicality so long as the plaintiffs' claims arise from the same event or course of conduct and are based on the same legal theory. *Danvers Motor Co. Inc. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008).

As former subscribers, the named Plaintiffs are typical of members of the Class: like the Class the Plaintiffs were subject to the same challenged policies and practices.

### 4) **Adequacy of Representation**

A class representative is adequate if he or she had the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class. *Hassine*, 846 F.2d at 179. The adequacy of representation requirement tends to merge with the commonality and typicality criteria. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997). Here, Plaintiffs are adequate representatives for the Class. Like all members of the Class, Plaintiffs were subject to the same challenged marketing policies and practices. As a result of their efforts, all members receive benefits through the Settlement.

The named Plaintiffs have no interests that are antagonistic to or in conflict with the class they seek to represent and their alleged injuries are identical to those suffered by class members. *See Amchem*, 521 U.S. at 625-27 (courts look  at whether the representatives' interest are in any way antagonistic to or in conflict with those of the class members). In addition, Plaintiffs' counsel are active practitioners who are highly experienced in class action and consumer fraud litigation. *See* Joint Decl. ¶ 17, Exhibits A & B.

## B.  **The Settlement Meets the Requirements of Fed. R. Civ. P. 23(b)(3)**

In addition to meeting the requirements of Rule 23(a), the Class also must

satisfy Rule 23(b)(3), which states:

> (b)     Class Actions Maintainable.  An action may be maintained as a
> class action if the prerequisites of subdivision (a) are satisfied, and in
> addition:
>
> * * *
>
> (3)     the court finds that the questions of law or fact common
> to the members of the Class predominate over any questions affecting
> only individual members, and that a class action is superior to other
> available methods for the fair and efficient adjudication of the
> controversy.

Rule 23(b)(3) is satisfied in this action because (i) questions of law or fact

common to the Class members predominate over any questions affecting only

individual Class members, especially in light of the proposed Settlement, which

eliminates any individual issues, and (ii) a class action is superior to other available

methods for the fair and efficient adjudication of this controversy.

### 1)  **Common Questions of Law and Fact Predominate**

In determining whether common questions predominate, a court's inquiry is

directed towards the issue of whether common questions predominate over

individual issues.  *Prudential*, 962 F.Supp. at 510-11.  Here, as set forth above, it is

clear that for the purpose of certification of the Class for settlement, the same set of

operative facts and a single proximate cause apply to each member of the Class,

*i.e.*, the same challenged marketing policies and practices that effectively short-

changed the Class.  If Plaintiffs and each of the Class members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendant in order to establish liability.

### 2) A Class Action is Superior to Numerous Individual Actions

Rule 23(b)(3) sets forth certain factors that may be pertinent in considering whether a class action is a superior method by which to adjudicate a controversy. *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D 180, 186 (D.N.J. 2003) ("The Rule sets forth a non-exhaustive list of factors to be weighed.").  The Rule provides that these factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigations of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

When certifying a settlement only class, the Court need not inquire whether the case, if tried, would pose intractable management problems, for the purpose of the settlement is to not have a trial.  *Amchem*, 521 U.S. at 620. Moreover, "[f]or the purposes of settlement, concentrating litigation in one forum is desirable." *Varcallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207, 234 (D.N.J. 2005).

A class action is superior to other available methods for the fair and efficient adjudication of this litigation within the meaning of Rule 23(b)(3) because (i) absent class action certification, the Court is faced with the potential burden of litigating numerous individual lawsuits, all of which would arise out of the same set of operative facts alleged in the Complaint; (ii) the resolution of common issues alleged in one action will both produce an efficient use of judicial resources and result in a single outcome that is binding on all Class Members; (iii) any administrative difficulties in handling potential individual issues under the class action device are less burdensome than the problems that are likely to arise in handling the same claims in numerous separate actions; and (iv) because of the expense of maintaining individual actions, denial of class certification here would effectively prevent certain individuals from asserting their claims against the Defendant. *See, e.g., Phillips Petroleum Co. v. Schutts*, 472 U.S. 797, 809 (1985) (class action plaintiffs' claims uneconomical to litigate individually); *Varacallo*, 226 F.R.D. at 234 ("Without question, class adjudication of this matter will achieve an appreciable savings of effort, time and expense, and will promote uniformity of decision on the issues resolved and to which the parties will be bound.").

Here, a class action would be the superior method of resolving the Class Members' claims.  All of the Class Members' claims are based upon the same

basic operative facts and legal standards.  It would be a far better use of judicial resources to adjudicate all of these identical issues once, on a common basis, than repeatedly, literally millions of times.

Most importantly, if the Class members' claims were asserted on an individual basis, the reality is that those claims would never be asserted in litigation.  Class members' claims are, in contrast to the costs of litigation or even the risks of arbitration, *de minimis.* The cost of adjudicating them properly would be thousands, if not hundreds of thousands of dollars each, thus making them, to use the class action lexicon, "negative-value claims."  As Judge Posner observed in *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)

> The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30. . . . The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.

As such, a class action is the superior method for adjudicating the Class Members' claims.

## POINT TWO

## THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

In addition to satisfying the class certification requirements under Rule 23 a proposed settlement must be "fair, reasonable and adequate."  *In re Prudential,* 148 F.3d at 316.  "Rule 23(e) imposes on the trial judge the duty of protecting

absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims." *Id.* For the reasons set forth below, the Settlement is fair, reasonable and adequate, and should be approved.

A. **Standards For Approval Of Class Action Settlement**

Approval of a proposed class action settlement is a matter within the sound discretion of the court. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999). *See also Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956 at 965 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30, 34 (3d Cir. 1971). In exercising that discretion, the Third Circuit has outlined a set of nine factors, generally referred to as the *Girsch* factors, to determine whether a settlement is fair, reasonable and adequate.

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action [through trial]; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks*, 55 F.3d at 785; *Girsh,* 521 F.2d at 157 .

There is a strong judicial policy in favor of resolution of litigation before trial. *In re GMC Pick-Up Truck Fuel Tank Product Liability Litigation,* 55

F.3d768 (3rd Cir.), *cert. denied*, 516 U.S. 824 (1995). ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").  When a settlement is reached on terms agreeable to all parties, it is to be encouraged.  *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).  This Court has articulated the rationale for that policy as follows:

> [W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury.  Moreover, the time and expense that precedes the taking of such a risk can be staggering.  This is especially true in complex commercial litigation.

*Weiss v. Mercedes-Benz of North America,* 899 F. Supp. 1297, 1300-01 (D.N.J. 1995).

Settlements enjoy a presumption that they are fair and reasonable when they are the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation.  *GM Trucks,* 55 F.3d at 785 ("This preliminary determination establishes an initial presumption of fairness when the court finds that:  (1) the negotiations occurred at arm's length . . . (3) the proponents of the settlement are experienced in similar litigation. . . ."); *see also* Manual For Complex Litigation, Third § 30.43 (1995).  Thus, although a court must evaluate a proposed settlement, the court may rely on the judgment of experienced counsel in doing so.

A fair, reasonable and adequate settlement is not necessarily an "ideal settlement." A settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential,* 962 F. Supp. at 534 (citations omitted). As one court has noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.
>
>               * * *
>
> Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties. We may not delete, modify, or substitute certain provisions of the consent decree. Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must then be given or withheld. . . . In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625, 630 (9th Cir. 1982).

*See also Lake v. First Nationwide Bank*, 900 F.Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class.'") (citation omitted).

The *Girsch* factors and related settlement principles strongly favor approval of this settlement as fair, reasonable and adequate.

## B. **The Settlement Is Fair, Reasonable And Adequate**

Each of the *Girsch* factors demonstrates that the Settlement is fair, reasonable and adequate, and should be approved because it achieves a substantial benefit for the Class without the further delay, risks and expense of continued litigation.

### 1) **Continued Litigation Would Be Long, Complex And Expensive**

The first *Girsh* factor is whether the settlement avoids a lengthy, complex and expensive continuation of litigation. Courts consistently have held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement. *Lake*, 900 F. Supp. at 732 ("due to the relative complexity of the issues involved and the amount of data that would need to be processed, the costs of litigating this matter through trial would likely be high"); *Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309, 313 (S.D.N.Y. 1978). *See also GM Trucks*, 55 F.3d at 812 (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlements, which offer immediate benefits and avoid delay and expense).

Here, due to the factual and legal complexities involved in this case, continued litigation necessarily would be extremely expensive and time-consuming. Joint Decl. ¶ 14. Due to the procedural challenge under Vonage's

Terms of Service to the class dimension of this case, and motion to compel arbitration on an individual basis, the parties have not undertaken extensive class-based discovery.[3]  Joint Decl. ¶ 15.  Numerous depositions would have to be taken, if Defendant' procedural challenge to this case did not succeed.  Joint Decl. ¶ 16 Moreover, given the allegations of deceptive statements and marketing, the services of appropriate experts may be necessary to properly frame the wrongdoing on a class-wide basis.  Joint Decl. ¶ 16.

Moreover, the risks of substantial delay are palpable.  Local practices in this District show that this case would take some time to bring to trial.[4]  Even if Plaintiffs were successful, Vonage would undoubtedly appeal an adverse judgment, adding further time to a final resolution of this matter if it were litigated. Indeed, this case had been tied-up with Vonage's procedural challenge to the maintainability of this case for over a year before a settlement agreement had been reached.

---

[3]     No depositions had been taken, however written discovery related to the claims of the individual Plaintiffs was permitted pending Defendant's motion to compel arbitration on an individual basis.  *Id.*  Given the fact that Plaintiffs span the class period, Class Counsel was afforded a good, composite picture of Defendant's policies and practices on a class-wide basis. *Id.*

[4]     The most recent statistics available, as of September 2007, indicate that, for cases which go to trial, the median time from filing to disposition in the District of New Jersey is 31.6 months. http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/FederalJudicialCaseloadStatistics2010.aspx Table C-5.

Under all of the circumstances, a certain result now rather than an uncertain result years in the future, weighs in favor of approval of the Settlement.

**2)** <u>**The Reaction Of The Class Is Virtually Unanimous In Favor Of The Proposed Settlement**</u>

Although there are millions of class members, to date, there have been approximately 98 requests for exclusion and only seven (7) objections.[5]  *See* Affidavit of the Settlement Administrator, ¶ 12 (Joint Decl., Exhibit C) (for requests for exclusion).  The negative response to the Settlement is therefore negligible if compared against the potential number of class members; direct notice was sent to over four million persons.  Under *Girsch*, such a small number of negative responses favors approval of a class action settlement agreement.  *See Bell Atl.*, 2 F.3d at 1314 n.15 (silence is "tacit consent" to settlement); *Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3rd Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential*, 962 F.Supp. at 537 (small number of negative responses to settlement favors approval); *Weiss*, 899 F. Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement).

---

[5]     As formal objections to the Settlement are not due until April 29, 2011, Plaintiffs will address all of the objections for the Court at one time shortly after that deadline, and in advance of the May 12, 2011 Final Approval hearing.  Currently, the objections express more a hostility to lawyers and class actions than to the substance of the Settlement before the Court *sub judice*. Indeed, given the substantial, cash relief provided to the class, and the reasonable request from the common fund for fees and costs, the parties do not anticipate objections of substance.

**3) <u>The Parties Have Completed Sufficient Investigation And Discovery</u>**

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *GM Trucks,* 55 F.3d at 785; *Girsh*, 521 F.2d at 157. This factor "captures the degree of case development that class counsel has accomplished prior to settlement." *GM Trucks*, 55 F.3d at 813. "Through this lens," the Court of Appeals for the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id. See also Lazy Oil,* 166 F.3d at 588 ("Post-discovery settlements are more likely to reflect the true value of the claim and be fair.") (internal citation omitted).

Nevertheless, even settlements reached at a very early stage and prior to formal discovery may be appropriate if there is no evidence of collusion and the settlement represents substantial concessions by both sides. *See, e.g.*, *Weiss*, 899 F.Supp. at 1301 ("Admittedly, the case is still in the early stages of discovery.")

In *Weiss,* this Court addressed the Third Circuit's recognition:

> [T]hat early settlements could maximize the value for the class members while adhering to class action requirements. That court noted that a class member was better able to gauge his or her individual benefit to being a member of the class when a settlement offer accompanied the certification notice. The court also stated that a proposed settlement does not foreclose a class member's opportunity to challenge the adequacy of the class representation. The Third

Circuit seemed to stress that to accomplish an early settlement of a class action, a district court must adhere to the strictures of Rule 23 of the Federal Rules of Civil Procedure in the course of certification and settlement.   Absent proof of collusion, this will not prevent the certification of a settlement class.

*Id.* (citations omitted).

This case has been pending since 2005, yet remains in the early stages of discovery.[6]   Various procedural motions were filed by Defendant seeking to compel arbitration on an individual basis only, and discovery expressly related to class issues was not permitted during their pendency.  This action is being settled at a relatively early stage, but it was not settled on a blank slate, nor without sufficient information to make a reasoned and reasonable evaluation of the Plaintiffs' and Class members' claims.   First, the Settlement Agreement was modeled on the AG Settlement, and provides notice and case relief to Vonage's customers on a scale not contemplated by the AG Settlement.[7]   Second, while discovery was limited to the claims of each individual plaintiff pending resolution of Defendant's effort to compel arbitration on an individual basis, plaintiffs were

---

[6]      As discussed *supra*, while no depositions have been permitted, the written discovery on the claims of the individual Plaintiffs' pending Defendants' motion to compel arbitration on an individual basis spanned the class period and permitted review of Defendant's policies for that period.

[7]      As noted above, the initial action in this litigation was commenced prior to the first of the actions by an attorney general.

customers over the full scope of the class period and were afforded a look at Vonage's practices throughout the time at issue in this case.

Most importantly, the appropriateness of a class action Settlement is not measured by the thickness of the file or an assessment of the amount of formal discovery taken. *See In re Corrugated Container Anti-Trust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981); *Handschu v. Special Services Div.*, 605 F.Supp. 1384, 1394 (S.D.N.Y. 1985); *Cendant Corp. Litigation*, 264 F.3d 201, 235-36 (3d Cir. 2001); *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982). Such a rule, of course, would offend public policy -- which encourages the early and effective resolution of complicated cases such as this. Here, Class Counsel are highly experienced litigators whose practices encompass complex litigation, including national trials.

### 4) **Plaintiffs Face Considerable Risk In Proceeding to Trial**

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court must balance the risks of establishing liability and damages against the benefits afforded to the members of the Class, and the immediacy and *certainty* of a substantial recovery against the risks of continuing litigation. *Girsh*, 521 F.2d at 157. In *Weiss*, this Court noted in its discussion of this factor that: "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. "No matter how confident one may be of the outcome of litigation, such

confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).[8]  The risks that Plaintiffs face in ultimately obtaining a recovery on behalf of a nationwide class clearly demonstrate that the Settlement provides the Class with a substantial benefit that is not only fair, reasonable and adequate, but an excellent result.

Here, Class Counsel were able to assess the probability of ultimate success on the merits vis-à-vis the risks of establishing liability and damages and maintaining a class action.  Class Counsel analyzed and reviewed the information available to them, and concluded that the Settlement is well within the range of reasonableness in light of the best possible recovery, possible set-offs and attendant risks of litigation.  Thus, Class Counsel were able to evaluate the relative merits of each side's case and enter into the Settlement with a full view of the case's strengths and weaknesses.  *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

Here, the risks of establishing liability and damages, the fourth and fifth *Girsh* factors, are intertwined with respect to an evaluation of the Settlement.

---

[8]     Decisions that demonstrate the enormous risks of litigation include:  *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc) (after jury verdict in favor of plaintiffs and the Class, reversing the district court's denial of judgment n.o.v. for defendants and remanding with instruction to dismiss the complaint); *Levinson v. Prentice-Hall, Inc.,* 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned).

Plaintiffs believe that there is a strong possibility of establishing that Vonage's marketing practices and policies were deceptive and illegal.  However, over the class period, Vonage has claimed to make its marketing materials increasingly clear and unequivocal in response to reports of customer confusion.  Moreover, given the pendency of the appeal in *AT&T Mobility LLC v. Concepcion* before the Supreme Court for the United States of America, and the potential validation of class action bans like that used by Vonage in its Terms of Service, settlement at this stage will ensure substantial cash benefits to a class that might not be permitted to exist otherwise.

The Settlement here presents the Class with real relief now.  Such a consideration is not to be taken lightly, for as one court aptly noted, "no contested lawsuit is ever a 'sure thing.'"  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).

### 5)  <u>The Risks Of Maintaining The Class Action Through Trial</u>

As explained above, Class Counsel believe that this case is wholly appropriate for class certification in the litigation context.  However, there is always a risk that a Court would not find this action suitable for certification as a litigated class, or not find that it was suitable for litigation on a multi-state basis.  Further, even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, and a class may be

decertified at any time.  As one court has observed in approving a class action

settlement:

> the Court recognized that its class certification order was subject to
> alteration or amendment before the decision on the merits.  "To
> paraphrase Benjamin Franklin, plaintiffs now have their class action,
> the question is can they keep it."

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317 (N.D. Ga. 1993)

(citations omitted).  *See also Eggleston v. Chi. Journeyman Plumbers Local Union*

*No. 130 U.A.*, 657 F.2d 890, 896 (7th Cir. 1981) ("a favorable class determination

by the court is not cast in stone.").

**6)  Defendant's Ability To Withstand Greater Judgment, And
Reasonableness  Of The Settlement In Light Of The Best Possible
Recovery And All Attendant Risks Of Litigation**

The last three *Girsh* factors are the reasonableness of the settlement in light

of (i) Defendant's ability to withstand a greater judgment, (ii) the best possible

recovery, and (iii) all the attendant risks of litigation.  These factors, too, support

approval of this Settlement and its significant financial and structural benefits.

Countless settlements have been approved where a settling defendant has

had the ability to pay greater amounts, and the Third Circuit has noted that this fact

alone does not weigh against settlement approval.  *See, e.g., Warfarin*, 391 F.3d at

538.  More importantly, the court must "measure[] the value of the settlement itself

to determine whether the decision to settle represents a good value for a relatively

weak case or a sell-out of an otherwise strong case."  *GM Trucks*, 55 F.3d at 806.

The Third Circuit further stated in *GM Trucks*:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.* (citations omitted).

While Vonage was a pioneer in the field of VoIP communications, it is far from alone.  In addition to competing with cable television providers who package VoIP services with cable and DSL services, Vonage now competes with other discount telecommunication providers as well as free services, such as Skype, which are increasingly easy to use.  It is a matter of public record that Vonage is carrying substantial debt burdens while it continues to try and earn revenues in an increasingly competitive and cut-rate market.  Accordingly, determining the best possible recovery on behalf of the Class is more problematic.  There is a strong case for liability on behalf of the Class, however, there are real limits to Vonage's ability to pay a full finding of liability on behalf of the millions of subscribers who may be members of the Class.

Despite these limitations, the Settlement provides substantial cash benefits to the Class.  *See* Joint Decl. ¶ 19.  Class Members can be eligible for up to $195.00

for each account they had with Vonage.  *Id.* To compensate Class Members for Vonage's one month free promotion, and to recognize the lost time between ordering Vonage's service and actual activation, Class Members are eligible for $10.00 which reflects full compensation for most Class Members.  Alternately, those Class Members who cancelled within the introductory period, but did so from the time of activation and not of initial ordering are eligible for up to $25.00 for service charges (*i.e.* a full month) and $80.00 for any equipment charges that were paid, which represents full compensation for most Class Members.  Those Class Members who cancelled after such introductory periods, but were charged disconnection fees are eligible for up to $40.00, which represents full compensation for most Class Members.  Finally, Class Members who canceled service, but continued to pay service fees without using the service, are eligible for up to $50.00, which recognizes two billing cycles and full compensation for most Class Members.  While these sums are subject to possible *pro rata* reduction, assuming all of the 38,653 claims received as of April 8, 2011 are paid at the maximum allowable amounts, these claims would be paid in full and in the amount of $1,805,845.00 to the Class.[9]   Joint Decl. ¶ 20; Affidavit of the Settlement Administrator ¶ 13, 14 (Joint Decl., Exhibit C).

---

[9]     The claims period does not end until July 9, 2011, and the claims received as of April 8, 2011 have not yet been processed and reviewed for eligibility.

Overall, the *Girsh* factors militate strongly in favor of approving the proposed Settlement.  The settlement allows a substantial real recovery for all Class members now, rather than waiting for years for a recovery which might be more than the amount of the Settlement, but where there is a substantial risk of recovering nothing.  Class Counsel has made a full evaluation of the relevant facts and law and believe that, under all of the facts and circumstances, the Settlement is not only fair and reasonable, but represents a significant victory for the Class.

## <u>CONCLUSION</u>

For all the reasons set forth above and in the accompanying declaration and affidavits, Plaintiff respectfully requests that the Class be finally certified for settlement purposes and the Settlement and Plan of Allocation be approved.

Dated: April 11, 2011                                     Respectfully submitted,


                                                  __/s/ Scott Alan George_____
                                                  Scott Alan George
                                                  SEEGER WEISS LLP
                                                  550 Broad Street, Suite 920
                                                  Newark, NJ 07210
                                                  (973) 639-9100

                                                  Jonathan Shub
                                                  SEEGER WEISS LLP
                                                  1515 Market Street
                                                  Suite 1380
                                                  Philadelphia, PA 19102
                                                  (215) 564-2300

Andrew N. Friedman
Victoria S. Nugent
James J. Pizzirusso
Whitney R. Case
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
(202) 408-4600

*Co-Lead Class Counsel*